## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BRADLEY JENKINS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-10688** |
| **DARREL VANNOY** | **SECTION: "E"(3)** |

## REPORT AND RECOMMENDATION

Petitioner, Bradley Jenkins, a Louisiana state prisoner, filed this federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that his application be **DISMISSED WITH PREJUDICE**.

On June 11, 2015, petitioner was convicted of two counts of aggravated rape and one count of attempted aggravated rape under Louisiana law.[1] On June 24, 2015, he was sentenced to life imprisonment on each of the aggravated rape convictions and to thirty years imprisonment on the attempted aggravated rape conviction. It was ordered that those sentences be served concurrently and without benefit of probation, parole, or suspension of sentence.[2] On April 15, 2016, the Louisiana First Circuit Court of Appeal affirmed his convictions, affirmed his sentence for the attempted aggravated rape conviction, amended his sentences for the aggravated rape convictions to delete the restriction on parole, and affirmed those sentences as amended.[3] He did not seek further direct review.[4]

---

[1] State Rec., Vol. 3 of 7, transcript of June 11, 2015, pp. 116-17; State Rec., Vol. 1 of 7, minute entry dated June 11, 2015; State Rec., Vol. 1 of 7, jury verdict forms.
[2] State Rec., Vol. 3 of 7, transcript of June 24, 2015; State Rec., Vol. 1 of 7, minute entry dated June 24, 2015.
[3] State v. Jenkins, 193 So. 3d 1175 (La. App. 1st Cir. 2016); State Rec., Vol. 3 of 7.
[4] See Rec. Doc. 1, p. 2, answer to Question 9(g).

On June 15, 2016, petitioner filed an application for post-conviction relief with the state district court.[5] That application was denied on January 4, 2017.[6] His related writ applications were thereafter denied by the Louisiana First Circuit Court of Appeal on July 7, 2017,[7] and the Louisiana Supreme Court on October 8, 2018.[8]

In the interim, petitioner also filed a second application for post-conviction relief with the state district court.[9] That application was denied on March 5, 2018.[10] His related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal on June 4, 2018,[11] and the Louisiana Supreme Court on November 20, 2018.[12]

On May 21, 2019, petitioner filed the instant federal habeas corpus application asserting two claims.[13] The state filed a response arguing that, although the application is timely and petitioner's claims are exhausted, relief should nevertheless be denied because one of his claims fails on the merits and the other is procedurally barred.[14] Petitioner filed a reply.[15]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the

---

[5] State Rec., Vol. 3 of 7.
[6] State Rec., Vol. 3 of 7, Reasons for Denying Application for Post Conviction Relief.
[7] State v. Jenkins, No. 2017 KW 0537, 2017 WL 2889292 (La. App. 1st Cir. July 7, 2017); State Rec., Vol. 4 of 7.
[8] State ex rel. Jenkins v. State, 253 So. 3d 1281 (La. 2018); State Rec., Vol. 5 of 7.
[9] State Rec., Vol. 3 of 7.
[10] State Rec., Vol 3 of 7, Order dated March 5, 2018.
[11] State v. Jenkins, No. 2018 KW 0499, 2018 WL 2714912 (La. App. 1st Cir. June 4, 2018); State Rec., Vol. 6 of 7.
[12] State v. Jenkins, 256 So. 3d 990 (La. 2018); State Rec., Vol. 7 of 7.
[13] Rec. Doc. 1.
[14] Rec. Doc. 13.
[15] Rec. Doc. 14.

merits by the state court), <u>cert. denied</u>, No. 19-6413, 2020 WL 1906607 (U.S. Apr. 20, 2020).  The applicable standards of review are now as follows.

As to pure questions of fact, factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); <u>see also</u> 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

As to pure questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision on the merits of such a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." <u>Bell</u>, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

<u>Wooten v. Thaler</u>, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held: "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." <u>White v. Woodall</u>, 572 U.S. 415, 426 (2014). However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." <u>Bell</u>, 535 U.S. at 694; <u>accord</u> <u>Harrington v. Richter</u>, 562 U.S. 86, 102-03 (2011) ("Section 2254(d) reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); <u>Langley</u>, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); <u>Puckett v. Epps</u>, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

<u>Langley</u>, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." <u>Id.</u> at 170.

Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at

4

> hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

## II. Facts

The facts of this case are not in dispute. However, in brief, the Louisiana First Circuit Court of Appeal summarized those facts as follows:

> The defendant was convicted based upon his sexual abuse of his three minor nieces, the victims, K.N., K.P., and S.N.[FN 1] The defendant was found guilty on count one for the aggravated rape of K.N., guilty on count two for the aggravated rape of K.P., and guilty on count three for the attempted aggravated rape of S.N. The defendant was between fifteen and seventeen years of age at the time of the commission of the subject offenses.[FN 2]
>
> [FN 1] K.N. was born on May 10, 2003; K.P was born on April 15, 2006; and S.N. was born on July 25, 2007. In order to protect the identity of these minor victims, we reference the child victims by initials. See La.R.S. 46:1844(W).
>
> [FN 2] The record reflects that the defendant was born on July 17, 1996, and that the offenses were committed between July 17, 2011, and August 31, 2013.[16]

---

[16] State v. Jenkins, 193 So.3d 1175, 1177 (La. App. 1st Cir. 2016); State Rec., Vol. 3 of 7.

### III.  Petitioner's Claims

### A.  Ineffective Assistance of Counsel

Petitioner claims that he received ineffective assistance of counsel.  When he raised that claim in his first state post-conviction application, it was denied on the merits.  Specifically, the state district court held:

> Petitioner has raised several claims alleging that his Sixth Amendment constitutional rights were violated because his counsel was ineffective.  In his first claim, petitioner asserts that his counsel was ineffective for failing to investigate and present evidence to the jury that would have supported his alibi defense.  The State points out in its response to the Post-Conviction Relief Application that the documentary evidence that petitioner alleges should have been presented to the jury was actually obtained by petitioner's trial counsel.  After reviewing these documents, petitioner's trial counsel made a strategic decision not to advance the alibi defense and noted on the record outside the presence of the jury that petitioner only had an alibi for "part of the time that is included in the indictment" and acknowledged that "there is a period of time he was here in the parish."  The record supports that petitioner's counsel did not present an alibi defense because the facts did not support such defense.  Petitioner has failed to establish either prong of the test for ineffective assistance of counsel set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2051, 80 L.Ed.2d 674 (1984):  1) that counsel's performance fell below an objective standard of reasonableness under prevailing professional norms; and 2) that counsel's alleged inadequate performance prejudiced petitioner to the extent that the proceedings were rendered unfair and the plea suspect.  After considering the totality of counsel's representation, the Court finds no basis for petitioner's claim of ineffective assistance of counsel.  Accordingly, this claim has no merit.
>
> Additionally, the remaining ineffective assistance of counsel claims raised by petitioner do not meet either prong of the Strickland test and are without merit. [17]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons. [18]  The Louisiana Supreme Court likewise denied relief, stating simply: "Denied.  Relator fails to show that he received ineffective assistance of counsel under the standard of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." [19]

---

[17] State Rec., Vol. 3 of 7, Reasons for Denying Application for Post Conviction Relief.

[18] State v. Jenkins, No. 2017 KW 0537, 2017 WL 2889292 (La. App. 1st Cir. July 7, 2017); State Rec., Vol. 4 of 7.

[19] State ex rel. Jenkins v. State, 253 So. 3d 1281 (La. 2018); State Rec., Vol. 5 of 7.

Because an ineffective assistance of counsel claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting such a claim on the merits unless the decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a Strickland claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the Strickland standard itself.
>
> A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. Yarborough v. Alvarado, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." Ibid. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." Knowles v. Mirzayance, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

Harrington v. Richter, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

> Surmounting Strickland's high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the Strickland standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one.

Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

<u>Id.</u> at 105 (emphasis added; citations omitted). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." <u>Woods v. Etherton</u>, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to any aspect of petitioner's ineffective assistance of counsel claim.

As the state court correctly held, the clearly established federal law with respect to such claims was set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). For relief to be granted on such claims, <u>Strickland</u> requires that a petitioner show both that counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>Id.</u> at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th

Cir. 1998). Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. See Strickland, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

To prevail on the deficiency prong of the Strickland test, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793.

In the instant case, petitioner argues that his counsel was ineffective for failing to introduce evidence to prove the following facts:

(1)    Petitioner was confined as an in-patient at the Methodist Boys Home in Sulphur, Louisiana, for a portion of the time during which the offenses allegedly occurred.[20]

(2)    The victims' mother told a Child Protection investigator that K.N. had said that petitioner had not touched her in a sexual manner but had instead "tried" to make her touch him.[21]

---

[20] Rec. Doc. 1, pp. 16 and 20.
[21] Id. at p. 16.

9

(3)    Medical examinations of the victims produced no evidence of sexual abuse.[22]

(4)    Petitioner has been diagnosed with mild mental retardation.[23]

To give petitioner's first contention context, the Court notes that defense counsel's strategy at trial was to attempt create reasonable doubt in the jurors' minds by establishing that the victims endured deplorable living conditions at home and suggesting that their allegations of sexual abuse were concocted so that they would be removed from – and not returned to – those conditions. Defense counsel pursued that strategy vigorously, by referencing it in his opening statement,[24] repeatedly questioning witnesses regarding this possible motivation for the allegations,[25] and by relying on it in his closing argument.[26]    Although that strategy was ultimately unsuccessful, "an unsuccessful strategy does not necessarily indicate constitutionally deficient counsel." Martinez v. Dretke, 99 F. App'x 538, 543 (5th Cir. 2004); accord United States v. Cockrell, 720 F.2d 1423,

---

[22] Id. at pp. 17 and 20.
[23] Id. at p. 21.
[24] In his opening statement, defense counsel stated:

> To say that [the parents'] house was squaller [sic] is an understatement. Part of it had fallen off and was open to the elements. When the girls went to bed they looked up at the sky and if it was raining, it rained on them. Sometimes they didn't have enough to eat. You will hear that, too. Who wants to go back to that? Would you? There was a reunification plan being worked. The parents … failed it. And now the children have been adopted and are in a good home or with the biological father. But would you be afraid of going back to that? Would you? What would you do to stay out of the elements, keep food in your belly? Would you point to a young uncle who is sixteen, (16) seventeen, (17) years old and say he did something terrible to me so you don't have to go back.

State Rec., Vol. 2 of 7, transcript of June 10, 2015, p. 19.

[25] Id. at pp. 35-38 (cross-examination of Emily Cook), 68-69 (cross-examination of K.P.), and 99-100 (cross-examination of K.N.); State Rec., Vol. 3 of 7, transcript of June 11, 2015, pp. 52-54 (cross-examination of Dr. Neha Mehta) and 58-59 (direct examination of petitioner).
[26] In his closing argument, defense counsel stated:

> You heard from the children who said that their living conditions were deplorable and that they would not want to go back to that, which up until, as you heard from the O.C.S. worker, or the D.C.F.S. worker, up until late last year, there was a possibility that would happen. So, if you want a reasonable doubt, there it is. Wouldn't you do anything to stay out of that trailer? Wouldn't you do anything to have something good to eat? Food in your belly? Maybe accuse somebody you think is a juvenile of a crime.

State Rec., Vol. 3 of 7, transcript of June 11, 2015, p. 78.

1429 (5th Cir. 1983) ("[A] strategy is not proved wrong because, if as is the usual circumstance, a guilty person is convicted.  We have repeatedly stated that a counsel should not be judged ineffective by hindsight.").

Moreover, defense counsel's reason for choosing that line of defense rather than one based on an "alibi" that petitioner was confined as an in-patient at the Methodist Boys Home is obvious. As defense counsel acknowledged at trial outside the presence of the jury, petitioner's confinement at that institution encompassed only a *portion* of the time-frame alleged for the crimes in the indictment;[27] therefore, that purported alibi would not have exculpated him.  Indeed, at trial, petitioner himself testified that he lived near and had access to the victims.[28]  Therefore, introducing evidence of petitioner's confinement at the institution would have served no purpose.

As to counsel's failure to impeach K.N. based on an alleged prior statement that petitioner had not touched her in a sexual manner but had instead only "tried" to make her touch him, it should first be noted that petitioner has presented no evidence in support of his contention that K.N. ever actually made such a statement.  Moreover, regardless, "[a] decision whether and, if so, how to impeach a witness falls within the purview of counsel's trial strategy." Bruce v. Cain, Civ. Action No. 13-6435, 2014 WL 6713117, at *6 (E.D. La. Nov. 26, 2014).  As such, it is not to be lightly second-guessed. See, e.g., Yohey v. Collins, 985 F.2d 222, 228 (5th Cir. 1993) ("Given the almost infinite variety of possible trial techniques and tactics available to counsel, this Circuit is careful not to second guess legitimate strategic choices."); Laugand v. Cain, Civ. Action No. 06-5269, 2007 WL 3275127, at * 7 (E.D. La. Nov. 6, 2007).  On the contrary, the United States Supreme Court has explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after

---

[27] State Rec., Vol. 2 of 7, transcript of June 8, 2015, at p. 143.
[28] State Rec., Vol. 3 of 7, transcript of June 11, 2015, pp. 61-63.

conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

Strickland, 466 U.S. at 698 (citations and quotation marks omitted); accord Johnson v. Dretke, 394 F.3d 332, 337 (5th Cir. 2004) ("A conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness." (quotation marks omitted)). As a result, federal habeas courts presume that a trial strategy was objectively reasonable unless clearly proven otherwise. Strickland, 466 U.S. at 689.

Here, there are several legitimate reasons counsel could validly choose to forego impeachment of K.N. based on the purported prior inconsistent statement. First, K.N. was twelve years old at the time of trial,[29] and an attempt to impeach her by trying to get her to admit that she was lying could be interpreted by the jury as badgering a minor victim or as otherwise inappropriate. Second, the source of this purported impeachment evidence was the victims' own mother, a drug abuser who, at the very least, neglected her children,[30] and who would obviously have a reason to fabricate such a story, namely to deflect any blame which might be directed at her for not protecting them. And, third, a suggestion that K.N. had purportedly admitted that no abuse

---

[29] State Rec., Vol. 2 of 3, transcript of June 10, 2015, p.85.
[30] See, e.g., id. at pp. 30-32 and 35-38.

actually occurred would potentially undercut the whole theory of the defense, i.e. that the victims conspired together to falsely accuse petitioner as a means to escape their living conditions.

As to counsel's failure to present evidence that the victims' medical examinations revealed no physical evidence of sexual abuse, that aspect of petitioner's claim also fails. That evidence *was* in fact presented at trial: on direct examination, Dr. Neha Mehta testified that her examinations of all three victims yielded normal results.[31] Moreover, further belaboring that point would not have benefited the defense because Dr. Mehta convincingly testified that the absence of such physical evidence of sexual abuse is virtually meaningless, as "the private areas of the body heal very well."[32] She explained:

> We know from studies where we look at children who have been sexually abused versus children who have not been sexually abused that having a physical exam finding is going to be there less than five percent of the time. So, ninety-six (96) percent of the time we don't expect to find anything. That's in cases where there have been confessions. That includes cases where I have seen the visual evidence. I have seen the pornography where I can see from the pornography the child has been penetrated and I examine the child and the child's body still looks normal to me.[33]

Next, as to the contention concerning counsel's failure to present evidence that petitioner has purportedly been diagnosed with mild mental retardation, there are two problems. First, he has not provided any evidence establishing that he has in fact been diagnosed with mild mental retardation.[34] Second, and more importantly, he has cited no cases – and this Court's research has revealed none – holding that such a diagnosis is a defense to aggravated rape. It is true that mental *insanity* is a defense under Louisiana law. La. Rev. Stat. Ann. § 14:14 ("If the circumstances

---

[31] State Rec., Vol. 3 of 7, transcript of June 11, 2015, pp. 36, 42, and 48.
[32] Id. at p. 15.
[33] Id. at p. 16.
[34] Further, the Court notes that petitioner's testimony at trial certainly would not lead one to draw the inference that petitioner suffered from any mental impairment whatsoever. He answered questions appropriately and without any apparent difficulty. Id. at pp. 57-70.

indicate that because of a mental disease or mental defect the offender was incapable of distinguishing between right and wrong with reference to the conduct in question, the offender shall be exempt from criminal responsibility."). However, "[m]ere weakness of mentality or subnormal intelligence does not of itself constitute legal insanity." State v. Edwards, 257 La. 707, 712, 243 So. 2d 806, 808 (1971) (quotation marks omitted); accord State v. Chinn, 229 La. 984, 997-98, 87 So. 2d 315, 320 (1955) ("We are mindful of the fact that it is possible for a person to have such a feeble mentality as to be unable to distinguish between right and wrong, to understand the proceedings against him, or to assist in his defense. However, according to the universally accepted jurisprudence, mere weakness of mentality or sub-normal intelligence does not, of itself, constitute legal insanity."). Therefore, a defendant who is legally sane, albeit mentally disabled, may be validly convicted of aggravated rape under Louisiana law. See, e.g., State v. Fletcher, 341 So.2d 340, 343 (La. 1976).

Petitioner also contends in a general fashion that counsel was ineffective for failing to prepare by adequately investigating the case. Because petitioner provides no clear explanation of this contention, it is unclear whether it is simply being made in connection to the foregoing allegations or is instead intended as a separate, more global claim. However, if he intended the latter, he has not established that relief is warranted for the following reasons.

As an initial matter, the Court notes that petitioner has never offered any evidence whatsoever as to what steps counsel took or failed to take in investigating the case. Without such evidence, he cannot show that counsel performed deficiently in that respect. Netter v. Cain, Civ. Action No. 15-584, 2016 WL 7157028, at *11 (E.D. La. Oct. 6, 2016), adopted, 2016 WL 7116070 (E.D. La. Dec. 7, 2016).

Moreover, in any event, even if petitioner had made that showing, he would then additionally have to prove that prejudice resulted from the inadequate investigation. To make that showing, he must point to evidence in the record demonstrating that further investigation would in fact have revealed additional information beneficial to the defense. See Moawad v. Anderson, 143 F.3d 942, 948 (5th Cir. 1998); see also Brown v. Dretke, 419 F.3d 365, 375 (5th Cir. 2005); Wilson v. Cain, Civ. Action No. 06-890, 2009 WL 2163124, at *22 (E.D. La. July 16, 2009), aff'd, 641 F.3d 96 (5th Cir. 2011); Davis v. Cain, Civ. Action No. 07-6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008). Because petitioner has not identified any additional beneficial evidence that could have been discovered in a more thorough investigation, his claim is wholly speculative and, therefore, necessarily fails. See, e.g., Perry v. Louisiana, Civ. Action No. 19-13002, 2020 WL 1892794, at *19 (E.D. La. Mar. 30, 2020), adopted, 2020 WL 1889188 (E.D. La. Apr. 16, 2020); Eaglin v. Louisiana, Civ. Action No. 19-9659, 2020 WL 475770, at *25 (E.D. La. Jan. 7, 2020), adopted, 2020 WL 474923 (E.D. La. Jan. 20, 2020).

Lastly, petitioner argues that the Court must consider the cumulative effect of counsel's alleged errors. He is incorrect. "The [United States] Supreme Court has never squarely held that the cumulative error doctrine governs ineffective assistance of counsel claims." Hill v. Davis, 781 F. App'x 277, 280-81 (5th Cir.), cert. denied, 140 S. Ct. 389 (2019); accord Chester v. Vannoy, Civ. Action No. 16-17754, 2018 WL 2970912, at *52 (E.D. La. June 11, 2018) ("Although the U.S. Supreme Court's use of the plural 'errors' in the prejudice context suggests Strickland's prejudice prong should be evaluated cumulatively, this Court cannot say such a requirement is clearly established by U.S. Supreme Court precedent."). In any event, where, as here, a petitioner has failed to prove that his counsel was ineffective in any respect, "there is nothing to cumulate." Villaneuva v. Stephens, 555 F. App'x 300, 308 (5th Cir. 2014); accord United States v. Thomas,

724 F.3d 632, 648 (5th Cir. 2013) ("[T]here is no precedent supporting the idea that a series of 'errors' that fail to meet the standard of objectively unreasonable can somehow cumulate to meet the high burden set forth in <u>Strickland</u>."); <u>Pondexter v. Quarterman</u>, 537 F.3d 511, 525 (5th Cir. 2008) ("[T]he district court noted that '[m]eritless claims or claims that are not prejudicial cannot be cumulated, regardless of the total number raised'. We agree."); <u>United States v. Hall</u>, 455 F.3d 508, 520 (5th Cir. 2006) ("Our clear precedent indicates that ineffective assistance of counsel cannot be created from the accumulation of acceptable decisions and actions."); <u>Miller v. Johnson</u>, 200 F.3d 274, 286 n.6 (5th Cir. 2000) ("[Petitioner] has not demonstrated error by trial counsel; thus, by definition, [petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial."). As the United States Fifth Circuit Court of Appeals noted with respect to analogous claims of cumulative error: "Twenty times zero equals zero." <u>Mullen v. Blackburn</u>, 808 F.2d 1143, 1147 (5th Cir. 1987).

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision denying his ineffective assistance of counsel claim on the merits was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case. Accordingly, under the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

### B. Prosecutorial Misconduct

In his second and final claim, petitioner argues that the prosecutor engaged in misconduct by introducing evidence in violation of petitioner's rights under the Confrontation Clause. That claim was originally presented in petitioner's *second* state post-conviction application. The state

district court denied the claim without assigning reasons,[35] as did the Louisiana First Circuit Court of Appeal.[36]    However, the Louisiana Supreme Court thereafter expressly denied relief on procedural grounds, holding:    "Denied.    Relator has previously exhausted his right to state collateral review.    See State ex rel. Jenkins v. State, 17-1276 (La. 10/8/18) ___ So.3d ___."[37] Although that court did not cite the provision of state law on which its ruling was based, the applicable provision was La. Code Crim. P art. 930.4(E), which provides: "A successive application shall be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application."[38]

Based on the Louisiana Supreme Court's ruling, the state argues that this claim is procedurally barred from federal review.    The state is correct.

The United States Fifth Circuit Court of Appeals has held:

A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision.    To satisfy the "independent" and "adequate" requirements, the dismissal must "clearly and expressly" indicate that it rests on state grounds which bar relief, and the bar must be strictly or regularly followed by state courts, and applied to the majority of

---

[35] State Rec., Vol 3 of 7, Order dated March 5, 2018.

[36] State v. Jenkins, No. 2018 KW 0499, 2018 WL 2714912 (La. App. 1st Cir. June 4, 2018); State Rec., Vol. 6 of 7.

[37] State v. Jenkins, 256 So.3d 990 (La. 2018); State Rec., Vol. 7 of 7.

[38] In its earlier denial of petitioner's first post-conviction application, the Louisiana Supreme Court expressly warned him:

Relator has now fully litigated his application for post-conviction relief in state court. Similar to federal habeas relief, see 28 U.S.C. § 2244, Louisiana post-conviction procedure envisions the filing of a second or successive application only under the narrow circumstances provided in La.C.Cr.P. art. 930.4 and within the limitations period as set out in La.C.Cr.P. art. 930.8. Notably, the legislature in 2013 La. Acts 251 amended that article to make the procedural bars against successive filings mandatory. Relator's claims have now been fully litigated in accord with La.C.Cr.P. art. 930.6, and this denial is final. Hereafter, unless he can show that one of the narrow exceptions authorizing the filing of a successive application applies, relator has exhausted his right to state collateral review.

State ex rel. Jenkins v. State, 253 So.3d 1281, 1282 (La. 2018); State Rec., Vol. 5 of 7. Accordingly, it is evident that, in denying this second state post-conviction application, the Louisiana Supreme Court implicitly found that petitioner's prosecutorial misconduct claim failed to fall within any of the exceptions which would allow a successive application.

similar claims. This rule applies to state court judgments on both substantive and procedural grounds.

Finley v. Johnson, 243 F.3d 215, 218 (5th Cir. 2001) (citations omitted).

As noted, in the last reasoned state court opinion addressing this claim, the Louisiana Supreme Court denied this claim because it was first asserted in a prohibited successive state post-conviction application. Louisiana's rule against successive or repetitive applications clearly qualifies as an independent and adequate state procedural rule. See, e.g., Ardison v. Cain, No. 00-30248, 2001 WL 822445, at *3-4 (5th Cir. June 18, 2001); Reaux v. Cain, Civ. Action No. 17-8690, 2019 WL 1326909, at *2-3 (E.D. La. Mar. 25, 2019), appeal dismissed, No. 19-30319, 2019 WL 5448597 (5th Cir. May 31, 2019); Bordelon v. Terrell, Civ. Action No. 08-1931, 2010 WL 3325665, at *12 (W.D. La. Aug. 9, 2010), adopted, 2010 WL 3325693 (W.D. La. Aug. 23, 2010); Washington v. Cain, Civ. Action No. 98-0584, 2000 WL 863980, at *3-4 (E.D. La. June 27, 2000).

Therefore, "federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." Hughes v. Johnson, 191 F.3d 607, 614 (5th Cir. 1999). In the instant case, petitioner demonstrates neither.

"To establish cause for a procedural default, there must be something *external* to the petitioner, *something that cannot fairly be attributed to him*." Johnson v. Puckett, 176 F.3d 809, 816 (5th Cir. 1999) (emphasis added; quotation marks omitted). Objective factors that can constitute cause include interference by officials that makes compliance with the state procedural rule impracticable, a showing that the factual or legal basis for the claim was not reasonably available to counsel, and ineffective assistance of counsel. Romero v. Collins, 961 F.2d 1181, 1183 (5th Cir. 1992).

In this case, petitioner argues:

Although Mr. Jenkins has been able to obtain the assistance of an Offender Counsel Substitute at the institution where he is currently housed, an Offender is not required to rely solely upon the assistance of the Counsel assigned to assist him.

Mr. Jenkins humbly requests that this Court take into consideration of the fact that he has been classified as "Mildly Mentally Retarded," and allow him the right to have this Claim addressed on its merits ….[39]

Even if the Court assumes that petitioner is in fact mildly mentally disabled, an allegation on which he has provided no evidence, a petitioner's mental disability is not "external" to him and, therefore, cannot serve as "cause" for a procedural default. See, e.g., Harris v. McAdory, 334 F.3d 665, 668-69 (7th Cir. 2003); Hull v. Freeman, 991 F.2d 86, 91 (3d Cir. 1993); Corman v. Armontrout, 959 F.2d 727, 729 (8th Cir. 1992); Tacho v. Martinez, 862 F.2d 1376, 1381 (9th Cir. 1988). Further, "[a]bsent a showing of cause, it is not necessary for the court to consider whether there is actual prejudice." Martin v. Maxey, 98 F.3d 844, 849 (5th Cir. 1996).

Because petitioner has not met the "cause and prejudice" test, his claim is barred from federal review unless the application of the procedural bar would result in a "fundamental miscarriage of justice." In order to establish that there would be a "fundamental miscarriage of justice," a petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." Finley, 243 F.3d at 220 (citations omitted). However, the United States Supreme Court has cautioned:

> To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful.

---

[39] Rec. Doc. 14, pp. 2-3.

Schlup v. Delo, 513 U.S. 298, 324 (1995). In the instant case, petitioner presents no new evidence whatsoever in support of a contention that he is actually innocent. Therefore, he has not established that any miscarriage of justice will result from the application of the procedural bar.

Accordingly, federal review of this claim is barred.

## RECOMMENDATION

It is therefore **RECOMMENDED** the federal application for habeas corpus relief filed by Bradley Jenkins be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[40]

New Orleans, Louisiana, this ___21st___ day of May, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**

[40] Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.